**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

CAROLYN BATES,                                      :

    Plaintiff,                                     :

v.                                                 :          CA 13-00051-KD-C

UNITED STATES OF AMERICA,               :

    Defendant.

## REPORT AND RECOMMENDATION ON DISPOSITIVE ISSUES AND ORDER ON NON-DISPOSITIVE ISSUES

This matter is before the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A),

on the government's motion for sanctions (doc. 135 at 17-24),[1] the Plaintiff's response

(docs. 159 and 160) and the government's reply (doc. 164); and various other pending

---

[1]        As stated by the undersigned in *Robinson v. Ryla Teleservices, Inc.*,

[T]he critical issue in determining whether I have jurisdiction to issue an order, pursuant to § 636(b)(1)(A), or a report and recommendation to Judge DuBose, pursuant to § 636(b)(1)(B), "is what sanction [I] actually impose[], rather than the one requested by the party seeking sanctions." *La Barbera v. ASTC Labs., Inc.*, No. CV 2006-5306(DLI)(MDG), 2007 WL 1423233, at *1 (E.D.N.Y. May 10, 2007) (quoting 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2d ed. 1997)); *see also Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, No. 09–61166–CIV, 2011 WL 1456029, at *3 (S.D. Fla. April 5, 2011) (noting that "[f]ederal magistrate judges in this circuit frequently enter orders in cases where parties **seek** [dispositive] sanctions, including default judgments or dismissals, for spoliation") (emphasis added) (listing cases). In *La Barbera*, Magistrate Judge Go determined not to impose the requested sanction of default judgment, and stated that if she had "determine[d] that the sanction of dismissal [was] appropriate, [she] would [have] convert[ed her order] to a report and recommendation for consideration under Fed. R. Civ. P. 72(b)." 2007 WL 1423233, at *1 (citations omitted); *see also Covington v. Patriot Motorcycles Corp.*, No. CV-07-955-PHX-FJM, 2008 WL 1971388, at *1 (D. Ariz. May 2, 2008) ("If the sanctionable conduct is so egregious[ ] to warrant imposition of a dispositive order, such as, striking a defendant's answer and entering default, a magistrate judge may only issue a report and recommendation to the assigned district judge.") (citations omitted).

*Robinson*, No. CA 11-131-KD-C, 2012 WL 505856, at *1 n.2 (S.D. Ala. Jan. 19, 2012).

motions and objections filed by the parties (docs. 144, 151, 152, 153, 154 and 155).  (*See* doc. 156 (carrying all objections and requests for relief presented in docs. 144, 151, 152, 153, 154 and 155 to be considered in conjunction with the government's motion for summary judgment.).)   The government's motion for sanctions (doc. 135 at 17-24) is **DENIED** for the reasons discussed herein.   The numerous issues raised in documents 144, 151, 152, 153, 154 and 155 and the undersigned's rulings with respect to those issues are explained below.

Additionally, this matter is before the Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the motion of the United States of America ("United States") for summary judgment (doc. 135); the Plaintiff's response (docs. 159 and 160); and the United States' reply (doc. 164).   After consideration of the motion and briefs, as well as the parties' filings, it is the Magistrate Judge's **RECOMMENDATION** that the government's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** as discussed below.

## United States' Motion for Sanctions

The government seeks dismissal of this case pursuant to Fed. R. Civ. P. 37(b) and 41(b) as a sanction for the Plaintiff's discovery violations and failure to prosecute this matter.  (Doc. 135 at 17-24.)  At the outset, the undersigned stresses that this is not a case where the Plaintiff failed to pursue her cause of action and allowed her case to languish.[2]  Throughout the pendency of this matter, the Plaintiff has been more than active when it comes to submitting motions, objections and various other filings with the Court.   (*See* docket sheet.)  The Plaintiff, however, has exhibited a reluctance to cooperate with the discovery process, and it is that failure to cooperate and, at times,

---

[2]       However, the Plaintiff did fail to appear in Court for one of the hearings held by the undersigned.  (*See* doc. 87 at 2.)

failure to comply with discovery rules and court orders, that the government seizes upon in its motion for sanctions.  (Doc. 135 at 17-24.)  While the undersigned previously addressed the Plaintiff's failure to comply with discovery procedures, (doc. 87), the undersigned specifically advised the government—both orally at the August 7, 2014 hearing and in the Court's written order—that it should employ compulsory process and move to compel compliance if needed.  (*Id.* at 2.)  Specifically, the undersigned stated as follows:

> [B]ecause, thus far, the Plaintiff has failed to cooperate with the discovery process, the United States is advised to proceed with discovery through the utilization of compulsory process.  If the Plaintiff continues to fail to comply with discovery procedures, as previously stated by defense counsel, the government is to present the Court with a properly supported motion to compel.

(*Id.*)  Subsequently, the government failed to seek any relief from this Court during the discovery period.  (*See* docket sheet.)  In fact, during the entire pendency of this case, the government never filed a single motion to compel.  (*See id.*)  Instead, the government waited until after the discovery period closed and filed a motion to dismiss this entire case as a sanction for discovery violations.  (Doc. 135 at 17-24.)

The undersigned acknowledges that discovery in this matter was poorly conducted and that the Plaintiff was responsible, in part.[3]  However, the government was complicit in the failure of the discovery process by failing to file a motion to compel the Plaintiff's compliance.  Given the government's failure to file a motion to compel as directed by the Court, the undersigned finds that the imposition of such an extreme sanction as dismissal is inappropriate and unwarranted.  *See Robinson*, 2012 WL 505856,

---

[3]     The undersigned notes that the Plaintiff has repeatedly accused the government of discovery abuses.  Regrettably, the parties have spent far too much time and effort placing blame on each other and too little time working out their discovery disputes.  However, when attempts at cooperation are rebuffed and discovery is stalled by failures to comply with discovery rules and court orders, as the government contends, the party seeking compliance must seek relief from the Court in a properly supported motion to compel.

at *2 ("Especially considering that the defendant never moved to compel [the plaintiff's] attendance at her deposition, her conduct does not warrant dismissal—with or without prejudice—of her claim." (emphasis omitted)); *Swofford v. Eslinger*, No. 6:08-cv-66-Orl-35DAB, 2009 WL 1025223, at *3 (M.D. Fla. Apr. 14, 2009) ("Plaintiffs did not file a timely motion to compel, which might have served to resolve this issue during the discovery period. Sanctions are not warranted." (citing *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371, 2009 WL 139507, *4 (11th Cir. 2009) (unpublished))); *Reliance Ins. Co. v. Core Carriers, Inc.*, No. 3:06-cv-585-J-20MCR, 2008 WL 686153, at *1 (M.D. Fla. Mar. 10, 2008) ("Defendant made a tactical decision to wait to seek a sanction. As such, [d]efendant is partly to blame for the delay in addressing [p]laintiff's behavior and the Court will not grant the sanctions requested by [d]efendant at this time."); *Williams v. Grieg Shipping A/S*, 219 F.R.D. 537, 540 (S.D. Ala. 2003) ("[A]t this juncture, sanctions involving expenses and fees for alleged discovery abuses are procedurally invalid because [p]laintiff never filed a motion to compel disclosure or discovery." (citing Fed. R. Civ. P. 37)).    Accordingly, the government's motion to dismiss the Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 37(b) and 41(b) is **DENIED**.

### United States' Motions to Substitute Affidavits
### Submitted in Support of its Motion for Summary Judgment

The United States moved to substitute new declarations of Frances S. Davis and Brenda M. Howell for the declarations of said individuals filed originally in conjunction with the government's motion for summary judgment.  (Docs. 153 and 154.)  Ms. Davis' original declaration contained a typed signature, (doc. 135-12), and the government moves to substitute it with a declaration that is signed by hand, (doc. 153-1).  (Doc. 153.)  Ms. Howell's original declaration was filed with several pages missing due to a scanning error.  (Doc. 135-2.)  The government seeks to correct that error by filing the

complete declaration of Ms. Howell.  (Doc. 154-1.)  The government's motions (docs. 153 and 154) are hereby **GRANTED**.

### Plaintiff's Various Objections and Requests for Relief

The Plaintiff has filed three documents in which she asserts various objections, (docs. 144, 151 and 155), and the government has responded to some of those objections (doc. 152).  The Plaintiff titles those three filings as motions, but it is not entirely clear the relief the Plaintiff seeks.  Despite the disorganized and confusing nature of said filings, the undersigned has parsed through them and addresses the Plaintiff's arguments herein.  Because many of the issues are repeated throughout the three filings, the undersigned considers them together.

First, the Plaintiff objects to several of the government's filings as being untimely. These timeliness objections are **MOOT** because the undersigned either granted the government extensions of time before the documents were filed, or the undersigned entered orders after the fact stating that the late filings are permitted, (*see, e.g.*, doc. 143 at 1 n.1.; doc. 149).  Furthermore, the undersigned has granted multiple extensions of time for both parties in this matter, and neither party has been prejudiced by those extensions.

Second, the Plaintiff objects to three declarations filed by the government in support of its motions.  (Doc. 155, ¶¶ 3, 13-15.)  The Plaintiff's objection with respect to Brenda Howell's declaration is **MOOT** because that declaration was apparently only filed in support of the government's motion for dismissal as a discovery sanction,[4] and

---

[4]     The government cites to Ms. Howell's declaration on page 23 of its motion.  (Doc. 135 at 23.)  She cites to the declaration—without reference to any specific paragraph in the seven-page document—for the proposition that "[the Plaintiff] waited until after her client's hearing to go down to the first floor and report the alleged incident to the guard."  (*Id.*)  The impact of that statement for purposes of resolving a motion for discovery sanctions is lost on the undersigned.  Ms. Howell is a paralegal assisting defense counsel with this case.  Her

the undersigned denied that motion above.  The Plaintiff's objections with respect to Jonathan Lear's and Frances Davis' declarations are **OVERRULED**.  The Plaintiff argues that said affidavits contain inadmissible evidence, but the Plaintiff has not identified inadmissible statements or explained why they are inadmissible.  (*Id.*, ¶¶ 14-15.)  The Plaintiff also argues that Mr. Lear's and Ms. Davis' declarations are untimely; however, they were timely filed in conjunction with the government's motion for summary judgment.  (Doc. 135-5; doc. 135-12.)  As discussed above, the government has moved to substitute a hand-signed version of Ms. Davis' declaration, and the undersigned granted that motion.  The Plaintiff also contends that the government improperly withheld Ms. Davis' declaration during discovery.  (Doc. 144, ¶ 23.)  However, the Plaintiff has not provided any support for that claim, (*see id.*), and a review of the file indicates that Ms. Davis' declaration was disclosed to the Plaintiff before discovery began when the government filed it as an exhibit to the government's original motion to dismiss.  (Doc. 12-12.)

The Plaintiff appears to move the Court to enter a default judgment against the government as a sanction.  (Doc. 144 at 1-2; doc. 151 at 1-2; doc. 155 at 1-2.)  To the extent the Plaintiff moves for such relief, that motion is unwarranted, lacks sufficient factual support and is hereby **DENIED**.

The Plaintiff states, without any development, that summary judgment should be entered in her favor.  (Doc. 144 at 1; doc. 151 at 1; doc. 155 at 1-2.)  However, to the extent the Plaintiff seeks such relief, it is wholly unsupported.  The Plaintiff has not "identif[ied] each claim or defense . . . on which summary judgment is sought," as

---

declaration consists of a lengthy recounting of the information gathered from interviewing witnesses during the investigation of this case.  (*See* doc. 154-1.)  The government never explains the significance of the declaration with regard to advancing the motions pending before the Court, and the government never explains how the contents would be reduced to an admissible form at trial.  It is easily disregarded.

required by Rule 56.  Fed. R. Civ. P. 56(a).  The Plaintiff also failed to "show[] that there is no genuine dispute as to any material fact" as required by the Rule.  *Id.*  Without providing any factual or legal support and without following any of the procedures associated with a motion for summary judgment, the undersigned cannot construe the Plaintiff's demands for judgment as a matter of law and references to Rule 56, (*see* doc. 144 at 1; doc. 151 at 1; doc. 155 at 1-2), as a properly filed motion for summary judgment.

The Plaintiff filed an exhibit (doc. 151-4), which appears to contain medical and other confidential information.  The Plaintiff has moved to maintain that exhibit under seal.  (Doc. 151 at 1.)  Said motion is **GRANTED** and the clerk is directed to maintain document 151-4 under seal.

The undersigned now turns to the government's motion for summary judgment.

### United States' Motion for Summary Judgment

As stated above, the undersigned has considered the government's motion for summary judgment and hereby submits the following report and recommendation on said motion to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

### Background

The Plaintiff, proceeding *pro se*, asserts claims of negligence, wantonness[5] and negligent infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) and §§ 2671 *et seq.*  (Doc. 17.)  The FTCA provides a limited waiver of sovereign immunity whereby a plaintiff may sue the United States for personal injuries caused by employees of the United States "under circumstances where the United States, if a private person, would be liable to

---

[5]     As discussed further below, Count II of the Amended Complaint is labeled as a gross negligence claim, but is, in fact, a wantonness claim.

the claimant in accordance with the law of the place where the act or omission occurred." § 1346(b)(1). Here, the Plaintiff's claims arise out of an incident that occurred on August 27, 2009, at the federal courthouse in Selma, Alabama. (Doc. 135-3.) Therefore, Alabama law governs the Plaintiff's claims. *See Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) (per curiam) ("The [FTCA] was designed to provide redress for ordinary torts recognized by state law. . . . As the alleged tort here occurred in Florida, Florida tort law applies." (citation and internal quotation marks omitted)).

**Findings of Fact[6]**

On August 27, 2009, the Plaintiff appeared at the federal courthouse in Selma, Alabama, for a disability hearing where she served as the representative of a disability claimant. (Doc. 135-3; doc. 159 at 70.) The disability claimant's parents, Marvin and Bernetta Shields, were also present that day. While waiting in the second floor hallway of the courthouse, the Plaintiff started to sit down on one of the courthouse benches. (Doc. 135-3 at 1.) However, as the Plaintiff sat down, the bench tipped over causing the Plaintiff to fall to the floor, and the bench then fell on top of the Plaintiff. (Doc. 135-1 at 1.) The bench had not been fastened or secured to the floor. (*Id.*) Marvin and Bernetta Shields lifted the bench off of the Plaintiff and helped the Plaintiff to her feet. (Doc. 159

---

[6] The undersigned notes that the facts outlined herein are not actual findings of fact, but merely a statement of the facts cast in the light most favorable to the Plaintiff for purposes of determining whether the United States is entitled to judgment as a matter of law at the summary judgment stage of the proceedings. *See Manning v. Tractor Supply Co.*, Civil Action No. 14-00366-KD-M, 2015 WL 1578158, at *1 n.2 (S.D. Ala. Apr. 9, 2015) ("On summary judgment, the Court must 'resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.'" (quoting *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004))); *Perry v. United States*, No. 1:11-CV-2747-VEH, 2012 WL 4340057, at *1 n.2 (N.D. Ala. Sept. 18, 2012) ("This statement does not represent actual findings of fact" (citing *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007))).

at 71, 76, 79.)[7]  The Plaintiff then reported the incident to Officer Bettie Davis, who reported the incident to Sergeant Ernest Barnes of the Federal Protection Service.  (Doc. 135-1 at 1-2; doc. 135-3 at 1; doc. 159 at 97.)  Later that day, the Plaintiff presented to the emergency room at Vaughan Regional Medical Center with complaints of neck and back pain radiating to her right hip and right leg.  (Doc. 159 at 87-91.)  She was prescribed pain medication by the emergency medicine physician, (*id.* at 91), and she subsequently underwent additional treatment related to her injuries, (*see, e.g.* doc. 159 at 51-56).

According to Sergeant Barnes, Officer Maurice Stevenson—another security officer at the courthouse—reported that the same bench that flipped over on the Plaintiff also flipped over on another individual.  (Doc. 159 at 97.)  Sergeant Barnes did not state whether the other incident with the bench occurred before or after Plaintiff's incident.  (*Id.*)  In any event, Sergeant Barnes subsequently arranged for all the benches at the courthouse to be bolted to the floor to prevent any further such incidents.  (*Id.*)[8]

---

[7]    The government objects to all excerpts from deposition transcripts attached to the Plaintiff's response brief, including excerpts from the depositions of Marvin and Bernetta Shields, on the grounds that those deposition excerpts are unauthenticated and uncertified and because pages are omitted and the excerpts are not presented in chronological order.  (Doc. 164 at 3.)  First, exhibits used at the summary judgment stage need not be authenticated or otherwise presented in admissible form; rather, they must be capable of being reduced to an admissible form at the time of trial.  *Johnson v. Mobile Infirmary Med. Ctr.*, Civil Action No. 13-0431-WS-M, 2015 WL 1538774, at *1 (S.D. Ala. Apr. 7, 2015); *Abbott v. Elwood Staffing Services, Inc.*, 44 F. Supp. 3d 1125, 1133-35 (N.D. Ala. 2014) (explaining that, under the 2010 amendments to Rule 56, authentication of documents is no longer required).  The government offers no reason why the testimony contained in the deposition excerpts cannot be reduced to an admissible form.  Second, although the undersigned agrees that the excerpts were incorporated into the Plaintiff's brief in a confusing manner, the undersigned finds that they are sufficiently comprehensible and may be considered by the Court on summary judgment.  *See O'Hara v. Univ. of W. Fla*, 750 F. Supp. 2d 1287, 1293 (N.D. Fla. 2010) (concluding that parties are not required to file unabridged certified copies of depositions in support or in opposition to a motion for summary judgment).

[8]    Jonathan Kevin Lear, the General Services Administration's building manager for the federal courthouse in Selma, is not aware of this other incident involving the courthouse

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *see also Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v.*

---

bench. (*See* doc. 135-5.) He stated that the incident reported by Ms. Bates is the only incident he is aware of involving a courthouse bench moving or tipping when an individual sat down. (*Id.*)

*City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (internal citations omitted), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *see Comer,* 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

As stated above, in considering whether the United States is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the Plaintiff. *Comer*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all

reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski,* 573 F.3d at 1165 (internal citations omitted).

## Conclusions of Law

### I.   Negligence (Count I)

"In a negligence action asserted under the FTCA, a plaintiff . . . must show the *prima facie* elements of duty, breach of duty, causation, and damages."  *Perry v. United States*, No. 1:11-CV-2747-VEH, 2012 WL 4340057, at *2 (citing *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002); *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008)).  "More specifically, this is a premises liability case . . . [and] '[t]he duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the landowner's land, i.e., is the injured party a trespasser, a licensee, or an invitee." *Manning*, 2015 WL 1578158, at *2 (quoting *Galaxy Cable, Inc. v. Davis,* 58 So. 3d 93, 98 (Ala. 2010)).  Here, the parties agree and the undersigned agrees that the Plaintiff was an invitee.  (*See* doc. 159 at 4; doc. 135 at 11-17.)[9]  At the time of the incident, the Plaintiff was an invitee and, more specifically, a business invitee, because she was at the courthouse to contribute to a legal proceeding as a representative for a claimant during a hearing before the Social Security Administration.  *See Freeman v. Freeman*, 67 So. 3d 902, 907-08 (Ala. Civ. App. 2011) ("A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with

---

[9]     The United States did not conclusively state that the Plaintiff was an invitee; however, it argued its motion within the context of the duties owed to an invitee and in reliance on cases dealing with invitees.  (Doc. 135 at 11-17.)  Accordingly, the undersigned construes the United States' motion as a concession that the Plaintiff was an invitee.

business dealings of the possessor of the land.  On the other hand, a person who enters the land of another with the landowner's consent or as the landowner's guest, but without a business purpose, holds the legal status of a licensee." (citation and internal quotation marks omitted)).  A premises owner owes an invitee

> a duty to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises [are] in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Hunter v. Durr Sys., Inc.,* 2007 WL 1215075, at *2 (M.D.Ala. Apr. 24, 2007). This duty does not extend to "open and obvious" dangers, however. *Id.*
>
> In premises liability cases, "[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee[,]" and a premises owner is not an insurer of the safety of its invitees. *Ex parte Harold L. Martin Distrib. Co.,* 769 So. 2d 313, 314 (Ala. 2000). *See also Giles v. Winn–Dixie Montg., LLC,* 574 Fed. Appx. 892, 894 (11th Cir. 2014) (same).

*Manning*, 2015 WL 1578158, at *2-3.

In this case, the Plaintiff alleges that the government was negligent by failing to maintain the courthouse floor and benches in a reasonably safe condition.  (Doc. 17 at 3-4.)  Specifically, the Plaintiff alleges that the government breached its duty of care (1) by failing to ensure that the courthouse benches were secured to the floor; (2) by allowing the floor to be wet; and (3) by allowing the floor to be in disrepair.  (*Id.*)  The Plaintiff further alleges that the government breached its duty of care by failing to post signs in the second floor hallway warning of the unsecured benches, the wetness of the floor, and the disrepair of the floor.  (*Id.*)

### a.   Wetness and disrepair of the floor

The government argues that there is no evidence of the floors being wet or in disrepair.  (Doc. 135 at 17.)  The undersigned agrees.  Although the Plaintiff asserts in her response brief that the floor was wet and in disrepair, the Plaintiff provides no sworn statement or declaration from any witness attesting to those facts.  (*See* doc. 159

at 82.)[10]  Instead, the Plaintiff relies on a photograph that apparently displays the floor in the second floor hallway of the courthouse.  (*Id.* at 83.)  However, it is in no way evident from the photograph that the floor is wet or in disrepair.  Furthermore, the photograph is undated and there is no way the Court can determine whether the photograph reflects the condition of the floor at the time of the incident on August 27, 2009.  (*See id.*)  Even if the undersigned concluded that the photograph constituted competent evidence supporting the wetness and disrepair of the floor at the time of the incident, such evidence would be irrelevant to the Plaintiff's claims because the Plaintiff has not made any showing connecting the alleged wetness or disrepair of the floor to her injuries.  (*See id.* at 82-83.)

Because the undersigned finds that the Plaintiff has failed to present substantial evidence that the floor was wet and in disrepair at the time of the incident in question, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of the government on the issue of whether the government negligently maintained the courthouse floor.

> **b.**      **Condition of the bench**

Whereas the evidence fails to support the Plaintiff's claims that the floor was wet and in disrepair, the evidence clearly establishes that the benches in the second floor hallway, including the bench at issue, were not secured to the floor on August 27, 2009. (Doc. 135-3 at 1; doc. 159 at 97.)  However, the government suggests that summary judgment should be granted in its favor because the tipping of the bench was an open and obvious condition.  (*See* doc. 135 at 13 ("[O]ther factors to consider are whether the tilting/tipping of the bench/pew constituted an open and obvious condition[.]").)  A

---

[10]      Notably, the Plaintiff's affidavit includes no mention of the floor being wet or in disrepair at the time of her fall.  (*See* 135-3.)

premises owner does not owe an invitee a duty to warn of dangers that are open and obvious. *Manning*, 2015 WL 1578158, at *2. However, the government has not established that it should have been obvious to the Plaintiff that the bench at issue in this case was dangerous and could flip on top of her if she sat on it. (*See* doc. 135 at 12-13.) Furthermore, the cases cited by the government addressing open and obvious conditions involved mechanical bulls, *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1055 (Ala. 2003), excavated land, *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 160 (Ala. 1997), a hole in the asphalt of a parking lot, *Douglas v. Devonshire Apartments, L.L.C.*, 833 So. 2d 72, 74-75 (Ala. Civ. App. 2002), and the roof of a house the plaintiff was repairing, *Knight v. Seale*, 530 So. 2d 821, 821-22 (Ala. 1988). This case is easily distinguishable from those cases involving obvious dangerous conditions. Accordingly, the government has not shown that summary judgment should be granted on the grounds that the bench was an open and obvious condition.

Next the government argues that the Plaintiff's fall from the bench resulted from her contributory negligence. (Doc. 135 at 13-15.) "While the question of contributory negligence is normally one for the jury, if the facts are such that all reasonable people would logically have to reach the conclusion that the plaintiff was contributorily negligent, then contributory negligence may be found as a matter of law." *Serio v. Merrell, Inc.*, 941 So. 2d 960, 964 (Ala. 2006) (citations omitted). "In order to establish contributory negligence, the defendant bears the burden of proving that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing h[er]self in the way of danger." *Id.* (citations and internal quotation marks omitted). The government has not met this burden. The government relies on the declaration of Frances S. Davis, who stated that the Plaintiff's hands were full when she sat on the

bench, that the bench only tipped forward slightly when the Plaintiff sat on it, that the Plaintiff did not fall, and that the bench did not fall on the Plaintiff.  (Doc. 135 at 14-15 (citing doc. 135-12).)  The government argues that the Plaintiff "contributed negligently to her own injuries by not maintaining a proper lookout and/or carrying too many items in preparation for the hearing."  (Doc. 135 at 14.)  Notably, the government provided no evidence that the Plaintiff failed to maintain a proper lookout, nor has the government explained the need for maintaining a proper lookout while sitting on a bench.  (*Id.*)  Furthermore, there is no evidence connecting the Plaintiff's fall to her "carrying too many items" because Ms. Davis, the witness who stated the Plaintiff's hands were full, also stated that the Plaintiff did not fall at all.  (Doc. 135-12, ¶ 7.)  Clearly, there is a genuine dispute among the parties as to whether or not the Plaintiff fell.  Given that persistent factual dispute, the undersigned finds that a determination regarding contributory negligence is not appropriate at summary judgment and, instead, should be rendered by the trier of fact.

The government also argues that summary judgment should be granted in its favor because the Plaintiff has not produced evidence that the government had actual or constructive notice of the danger posed by the bench.  (Doc. 135 at 15-17.)  In response, the Plaintiff cites to the declaration of Sergeant Barnes as evidence that the bench had injured another individual and, thus, the government had notice that the bench was a defective condition.  (Doc. 159 at 96-97.)  Sergeant Barnes stated that Officer Stevenson reported another incident in which the bench flipped over on an individual.  (*Id.* at 97.)  In a footnote of the government's reply brief, the government questioned the reliability, veracity and authenticity of Sergeant Barnes' declaration.  (Doc. 164 n.3.)  Specifically, the government asserts, and the undersigned agrees, that the declaration is formatted suspiciously.  (*Id.*)  The government also contends that the

declaration "include[s] an untrue statement," (*id.*), but the government fails to identify the false statement or explain why it is false, (*id.*). Significantly, the government has not moved to strike the declaration on any grounds. Based on the undersigned's own review of Sergeant Barnes' declaration, it appears that Sergeant Barnes' statements regarding a separate incident involving the bench do not appear to be based on Sergeant Barnes' personal knowledge, but, rather, on a report by Officer Stevenson. (*See* doc. 159 at 97.) The government, however, has not objected to the declaration on that basis or otherwise challenged the declaration pursuant to Fed. R. Civ. P. 56(c)(2) or 56(c)(4). (*See* doc. 164.) The undersigned declines to do so on the government's behalf. In any event, the undersigned rejects the government's notice argument without relying on Sergeant Barnes' declaration as evidence that the government had notice of the condition of the bench.

A plaintiff asserting a premises liability action is not always required to show evidence of notice to survive summary judgment. *See Manning*, 2015 WL 1578158, at *3 (citing *Isbell v. Aztecas Mexican Grill*, 78 So. 3d 420, 423 (Ala. Civ. App. 2011)). The Alabama Supreme Court distinguishes cases involving slips and falls on wet surfaces from cases involving a defect or instrumentality that is part of the premises. *Mims v. Jack's Restaurant*, 565 So. 2d 609, 610-11 (Ala. 1990). As the supreme court explained in *Mims*,

> [i]n . . . slip and fall cases, a plaintiff not only must make a prima facie showing that her fall was caused by a defect or instrumentality (a substance causing a surface to be slick) located on the premises, but she must also present prima facie evidence that the defendant had or should have had notice of the defect or instrumentality at the time of the accident. *Massey v. Allied Products Co.,* 523 So. 2d 397 (Ala. 1988); *Tice v. Tice,* 361 So. 2d 1051 (Ala. 1978). On the other hand, in cases where the alleged defect is a part of the premises (in this case, a loose threshold in the main entrance of a restaurant), once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will

go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident. For example, in *Winn–Dixie Montgomery, Inc. v. Weeks,* 504 So. 2d 1210 (Ala. 1987), a mother was going through a grocery store pushing a shopping cart, in which her son was sitting. The only unusual thing she noticed about the cart was that the wheels made a loud noise and were wobbly. While she left the cart for a moment, the child leaned over to reach for candy in a display rack, and, as he did so, the cart tilted over and his left cheek was impaled on an allegedly broken wire that was sticking up on the display rack. The defendants, appealing from a judgment based on a jury verdict in favor of the plaintiff, argued that there was no evidence that they had constructive notice of the defect. This Court affirmed, holding that the question whether the grocery store had constructive notice of the alleged defect was for the jury. *Winn–Dixie Montgomery, Inc. v. Weeks,* 504 So. 2d at 1211.

In both this case and in *Weeks,* the alleged defect or instrumentality was a part of the premises. Unlike a spilled substance, a defective threshold or a cart or a display rack is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store's customers. Because it was the main entrance of the restaurant, we find that the question whether [the restaurant] should have known that the threshold was defective was a question for the jury.

*Mims,* 565 So. 2d at 610-11. Subsequently, in *Isbell,* the Alabama Court of Civil Appeals followed *Mims* and concluded that the trier of fact should determine whether a premises owner had notice of an alleged defect in a booth seat that collapsed. *Isbell,* 78 So. 3d at 425. Specifically, that court stated as follows:

Given our supreme court's holding in *Mims . . . ,* we must agree with [the plaintiff] that, because the booth seat that collapsed under him was a fixture or "a part of the premises," the issue whether [the owner] had actual or constructive notice of the alleged defect in the booth seat should "go to the jury, regardless [of the fact that [the plaintiff] failed to make] a prima facie showing that [the owner] had or should have had notice of the defect at the time of the accident." 565 So. 2d at 610. For that reason, we reverse the summary judgment in favor of [the owner] and remand the cause for further proceedings.

*Isbell,* 78 So. 3d at 425.

Like the restaurant entrance in *Mims,* the shopping cart in *Weeks,* and the booth seat in *Isbell,* the bench in this case "is a fixture that requires ordinary and reasonable maintenance in order to provide [a] safe premises." *Mims,* 565 So. 2d at 611. As such,

the question of whether the government should have known that the unsecured bench was a defective condition is for the trier of fact. *See id.*; *Isbell*, 78 So. 3d at 425; *see also Perry*, 2012 WL 4340057, at *2-3 (rejecting the government's argument that summary judgment was warranted due to the lack of notice where the plaintiff was struck by an overhead fire door).[11]

### c. Causation and damages

In its reply, the government includes a discussion of the facts relating to the issues of causation and damages. (Doc. 164 at 3-7.) Though not entirely clear, the undersigned presumes that the government means to argue that it is entitled to summary judgment because there is no genuine dispute of material fact with regard to those issues and the Court should conclude that the Plaintiff cannot prove those

---

[11] The undersigned notes that the Plaintiff *may* have insufficient evidence to establish that the unsecured courthouse bench constituted a defective condition. *See Manning*, 2015 WL 1578158, at *4 ("The problem is, there is insufficient evidence that the shelf was even defective."); *Burlington Coat Factory of Ala., LLC v. Butler*, 156 So. 3d 963 (Ala. Civ. App. 2014) (concluding that the trial court erred when it denied the defendant's motion for judgment as a matter of law following the close of evidence at trial because "the jury had no evidence before it to support an inference that the brackets were defective or dangerous or that they had been improperly installed"). The government, however, failed to assert such an argument, (*see* doc. 135; doc. 164), and the undersigned declines to develop that argument on the government's behalf. The closest the government comes to such an argument is where it states that "[t]here could be no breach of duty to inspect the bench at issue in this case because a reasonable inspection would not have revealed the bench could topple on a person trying to sit on it, which is supported by the fact no such incident had ever been reported the entire time the benches have been in the hallway." (Doc. 135 at 16.) The government cites to no evidence supporting its assertion that "a reasonable inspection would not have revealed the bench could topple" when a person sits down. (*Id.*) Furthermore, the government cites to no evidence supporting its assertion that no other incidents have been reported. (*Id.*) Aside from the fact that the government's statement conflicts with Sergeant Barnes' declaration—the value of which the undersigned questions above—the government has not shown that another incident involving the bench flipping over has *never* been reported. Presumably, the government means to rely on the declaration of Mr. Lear, the GSA building manager for the courthouse, who stated that he is not aware of any such reports before or after the Plaintiff's incident on August 27, 2009. (Doc. 135-5, ¶ 3 (misnumbered as paragraph 2).) However, Mr. Lear stated that he did not become the building manager for the courthouse until August 2009, (*id.*, ¶ 2), and he had the bench bolted to the floor following the Plaintiff's incident, (*id.*, ¶ 8 (misnumbered as paragraph 7).) Thus, Mr. Lear's statement apparently applies to a rather short window of time and hardly establishes for purposes of summary judgment that another incident with the bench has never been reported.

elements of her claim.  To the extent the government asserts such an argument, it comes too late because it was not asserted in the government's motion.  (*See* doc. 135.)[12] Arguments raised for the first time in a reply are improper and ordinarily will not be considered by the Court.  *See, e.g., Thomas v. Austal, U.S.A., L.L.C.*, 829 F. Supp. 2d 1162, 1171 (S.D. Ala. 2011).  Therefore, the undersigned rejects the Plaintiff's newly asserted arguments on that basis.  Moreover, even if the government's arguments were timely raised, the undersigned would find that they lack merit.

The government boldly asserts, "Plaintiff has not provided any credible or reliable evidence that the bench fell on her."  (Doc. 164 at 3.)  While the government surely will present an argument of this kind at trial, it is not well received on summary judgment.  The Plaintiff stated in her affidavit and Marvin and Bernetta Shields testified at their depositions that the Plaintiff fell and that the bench fell on top of her.  (Doc. 135-1 at 1; doc. 159 at 71, 76, 79.)[13]  Such evidence clearly suffices for the purpose of summary judgment.

Additionally, the government states that the Plaintiff has not provided any expert testimony establishing that her alleged injuries were caused by the fall at issue.  (Doc. 164 at 5.)  However, the government did not provide any legal authority supporting the proposition that expert testimony is required to link the Plaintiff's medical injuries to the fall she allegedly sustained at the courthouse, (*see id.* at 3-7), and

---

[12]     The undersigned acknowledges that, in the section of the government's motion seeking dismissal of the Plaintiff's case for failure to prosecute and as a discovery sanction, the government included sporadic statements arguing that the Plaintiff was not injured as a result of the incident at the courthouse.  (Doc. 135 at 17-24.)  Those statements could not be fairly characterized as legal argument, and certainly do not consist of a coherent argument seeking summary judgment.

[13]     The government attacks the form of the deposition excerpts filed by the Plaintiff in opposition to the government's motion for summary judgment.  The undersigned rejected that attack above.  *See supra* note 7.

the undersigned has not discovered any such authority.  *See Taylor v. Pezold Management Assocs., Inc.*, No. 3:14-CV-188-WKW, 2015 WL 914906, at *4 (M.D. Ala. Mar. 3, 2015) (concluding in a premises liability case that the plaintiff was not required to provide expert testimony to provide the causal link between a defective condition and the plaintiff's injuries).

The government's damages argument is more difficult to follow.  (*See* doc. 164 at 4-7.  The government clearly disputes the Plaintiff's claim that the injuries documented in her medical records were caused by the incident with the bench at the courthouse.  However, that factual dispute is for the trier of fact.  The government has articulated no meaningful legal argument why summary judgment should be granted in the government's favor due to the facts related to damages in this case.  (*See id.*)[14]  While the Plaintiff may ultimately have difficulty proving damages to the extent alleged and demonstrating that those damages were caused by the incident at the courthouse, the Plaintiff has made an adequate showing of causation and damages to survive summary judgment.  (*See, e.g.*, doc. 159 at 51 ("Mechanism of injury – trauma: sat on a bench and the bench fell forward onto her.").)

Accordingly, it is **RECOMMENDED** by the undersigned that the government's motion for summary judgment be **DENIED** with respect to the Plaintiff's claim that the government negligently failed to maintain the courthouse benches in a reasonably safe condition.

## II.   Wantonness (Count II)

The Plaintiff labels Count II of the Amended Complaint "Gross Negligence."

---

[14]     To the extent the government's argument rests on its contention that the medical records filed by the Plaintiff fail to establish damages for summary judgment because they are not authenticated, the government's argument fails for the reasons stated above in footnote 7.  *See supra* note 7 (explaining with citation to authority that the Defendant is not required to authenticate exhibits filed in opposition to the government's motion for summary judgment).

(Doc. 17 at 5-6.)  However, based on the allegations in Count II, the Plaintiff actually has stated a wantonness claim.  (*See id.*)

"Under Alabama law, gross negligence is a degree of negligence; it is not the same as wantonness."  *Craft v. Triumph Logistics, Inc.*, --- F. Supp. 3d ----, 2015 WL 1565003, at *7 n.* (M.D. Ala. Apr. 8, 2015) (citing *Miller v. Bailey*, 60 So. 3d 857, 867 (Ala. 2010) ("Gross negligence is negligence, not wantonness."); *Armistead v. Lenkeit*, 160 So. 257, 259 (Ala. 1935) ("Gross negligence is defined as a want of slight care, as distinguished from ordinary care, on the one hand, and less culpable than wanton injury, on the other.")); *accord Belk v. Thompson*, No. 2:11-cv-415-MEF, 2012 WL 353763, at *2 n.1 (M.D. Ala. Feb. 3, 2012) ("Gross negligence is merely a greater degree of negligence[,] . . . and cannot be construed as a claim of wantonness, which is a qualitatively different tort concept of actionable culpability." (citations and internal quotation marks omitted)); *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996) ("Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . ." (citations and internal quotation marks omitted)).

As the Alabama Supreme Court stated,

> "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6–11–20(b)(3). "Wantonness" has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.

*Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994)).

Here, the Plaintiff alleges in Count II that the United States breached its duty to the Plaintiff "by wantonly, willfully and recklessly failing to provide safe floors, dry floors and safely secured and fastened pews." (*Id.*, ¶ 32.) Thus, the Plaintiff alleges the type of conduct—willful and reckless conduct—associated with a claim for wantonness, not gross negligence. Accordingly, despite the fact that the Plaintiff refers to Count II as a gross negligence claim, it is, in fact, a wantonness claim.

The government did not raise an argument as to whether summary judgment should be granted with respect to Count II. (*See* doc. 135.)[15] However, a review of the record reveals that there is no evidence that the government exhibited a conscious or reckless disregard for the safety of others or that the government knew that injury was likely to result from its acts or omissions. Accordingly, the Plaintiff lacks sufficient evidence to move forward on her wantonness claim and judgment with respect to that claim should be entered as a matter of law. Therefore, it is **RECOMMENDED** by the undersigned that summary judgment be **GRANTED** in favor of the government on the Plaintiff's wantonness claim (Count II).[16]

### III.    Negligent Infliction of Emotional Distress (Count III)

Although the government did not present any argument regarding the Plaintiff's negligent infliction of emotional distress claim, said claim is due to be dismissed because "'[n]egligent infliction of emotional distress is not actionable in Alabama.'"

---

[15]    The undersigned notes that the government correctly argues that the Plaintiff cannot recover punitive damages in a claim asserted under the FTCA, *see* 28 U.S.C. § 2674 ("The United States . . . shall not be liable [in an FTCA claim] . . . for punitive damages."), but also notes that the Plaintiff has not asserted a claim for punitive damages in the Amended Complaint, (doc. 17).

[16]    Furthermore, as discussed above, the Plaintiff has not put forth substantial evidence that the courthouse floor was wet or in disrepair. Therefore, the allegations of wantonness in Count II relating to the alleged wetness and unsafe condition of the floor—as opposed to the condition of the bench—are unsupported on that basis as well.

*Manning*, 2015 WL 1578158, at \*6 (citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 545 n.3 (1994); *Wilson v. Doss*, 2012 WL 5877854, at \*7 (M.D. Ala. Nov. 21, 2012)) (other citations omitted).  Accordingly, it is **RECOMMENDED** by the undersigned that Count III of the Amended Complaint (doc. 17 at 6-7) be **DISMISSED WITH PREJUDICE**.

<u>Conclusion</u>

For the reasons set forth above, it is hereby **ORDERED** by the undersigned that the government's motion for the entry of dismissal as a sanction (doc. 135 at 17-24) is **DENIED**; and the government's motions to substitute the affidavits of Brenda Howell and Frances Davis (docs. 153 and 154) are **GRANTED**.  The Plaintiff's motion for a default judgment (doc. 144 at 1-2; doc. 151 at 1-2; doc. 155 at 1-2) is **DENIED**; the Plaintiff's motion to maintain document 151-4 under seal (doc. 151) is **GRANTED**; and the Plaintiff's various objections are either **MOOT** or **OVERRULED**.

Additionally, for the reasons set forth above, it is **RECOMMENDED** by the undersigned that the government's motion for summary judgment (doc. 135 at 1-17) be **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment should be **GRANTED** in favor of the government on the issue of whether the government negligently maintained the floor on the second floor hallway of the courthouse.  However, summary judgment should be **DENIED** on the issue of whether the government negligently maintained the bench at issue in this case.  Thus, Plaintiff's negligence claim (Count I) should proceed only as it relates to the condition of the bench.  Summary Judgment should be **GRANTED** in favor of the government on Plaintiff's wantonness claim (Count II), and the Plaintiff's claim for negligent infliction of emotional distress (Count III) should be **DISMISSED WITH PREJUDICE**.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this order and report and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to this order and recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

 **DONE and ORDERED** this the 31st day of July 2015.

    s/WILLIAM E. CASSADY
    **UNITED STATES MAGISTRATE JUDGE**